# Irons *versus* McQuewan and Douglass.

A plaintiff having a judgment ripe for execution, has a vested right to execution process, with all the legal incidents of such process, of which he cannot be deprived by the order of a judge at chambers, made without notice or a hearing.

A judge may *stay* an execution upon good and sufficient grounds shown, but it should be with a stipulation that the lien be preserved.

A judge has no power to order an execution to be *returned* before the return day named in the writ. Such an order is void for want of authority to make it.

Where such an order was made, and the executions returned by the sheriff in pursuance of it, and before the return day the order was rescinded by the judge who made it, and the executions redelivered to the sheriff before sale of the goods: It was *held*, that such executions were entitled to priority over others, issued subsequent to them, and before the first order was made.

Error to the Common Pleas of *McKean county.*

This was a feigned issue to determine the right to the money raised by the sheriff's sale of the personal property of R. P. Wright. On the 5th of March, 1855, the plaintiff, Gideon Irons, obtained two judgments against Wright, one for $250, and the other for $450, upon which he caused executions to be issued and placed in the hands of the sheriff on the 7th March, 1855. On the 13th March, 1855, McQuewans & Douglass issued two writs for about seventeen thousand dollars against the same defendant, and which came to the sheriff's hands on the same day. On the day following R. P. Wright applied to O. L. Stanton, one of the associate judges of McKean county, who made the following order : " For satisfactory cause I hereby direct the *fi. fa.'s* now in the hands of the sheriff, to be returned on the above stated judgments, until next term, and all proceedings stayed in the mean time." The executions were returned the same day by the sheriff in pursuance of the order of Judge Stanton. Of these proceedings no notice was given to Irons or his attorney. On the 19th of March the plaintiff applied to the same judge, and upon

[Irons *v.* McQuewan.]

hearing, notice having been given to the other parties, the former order, staying the executions, was rescinded, and the writs directed to be proceeded in as if such order had not been made. The executions were accordingly, on the 24th March, 1855, handed back to the sheriff. No levy had been made on these writs prior to the order to return them. On the McQuewan & Douglass writs a levy was made on the 22d of March, the property advertised on the 23d, and a copy of the same levy attached to the Irons executions on the 24th of the same month. The property was sold on the 30th March, 1855, for the sum of $13,832.37, which was brought into court for distribution. This feigned issue was directed to try the right of the plaintiffs to have their executions satisfied out of this fund.

The court below (WHITE, P. J.), after stating the facts, instructed the jury as follows:—

" The case of the Commonwealth *v.* Magee, 8 *Barr* 240, is decisive of the power of the judge to make the order without notice, and of the right of the sheriff to obey it.

" The return of the writs, although their vitality may not have been destroyed, annulled their lien. This existed only while the sheriff had them in possession, and ceased to exist as soon as they were returned by order of a competent authority. It attached again on the 24th of March, but too late, as the lien of defendant's writs intervened on the 13th. The mistake of Judge S., if not occasioned by the fraud of defendants, would not modify or change the legal effect of his act. The attorney of McQuewan & Douglass had no authority to consent to the rescission of the judge's order, or to agree that the rights of these parties should be placed as they were prior to the granting of it. Such assent or agreement without leave from them, was simply void and did not affect their rights."

The jury found for the defendants.

The cause was removed to this court, and the foregoing instructions to the jury assigned for error.

*L. D. Wetmore,* for plaintiff in error.

*Johnson,* for defendants in error.

The opinion of the court was delivered by

WOODWARD, J.—A plaintiff having a judgment ripe for it, has a vested right to execution process, with all the legal incidents of such process; and if he can be deprived of this right or its incidents by the fiat of a judge, without notice or a hearing, then his judgment may be stricken out of existence, or any other property taken from him by the same means. An argument which

[Irons *v.* McQuewan.]

will sustain the right and power of a judge to do the one, would justify him in doing the other.

This plaintiff, Irons, had a right to the *fi. fa.* which he issued on the 5th March, 1855—the law allowed it and the court awarded it. Returnable by express command at the next term of the court, it became a lien on the defendant's goods the moment it passed into the sheriff's hands. Now a judge could not alter the return day either to hasten or retard it. No more could he deny the plaintiff the incidental right of lien. Both were fixed by law, and both were beyond his reach, for the law is higher than its ministers. What were his powers? He might for adequate cause shown, and upon due notice to the plaintiff or his attorney, suspend the functions of the writ, that is, delay its execution, until the new matter alleged could be inquired of and passed upon by the court that awarded it. This would impair no right which had vested, for until a sale of the defendant's goods the plaintiff has only a lien upon them, and that by virtue of his writ and not of the levy. I do not say what is the effect of a judge's order staying execution without an express stipulation that the lien shall be preserved. Possibly it may be a valid order, and possibly the lien is not preserved unless there be such a stipulation; but the point ruled is that it is the duty of the judge to see that it is preserved. He has power to impose terms, and if a stipulation for continuance of lien be necessary, let him see that it is made.

That the judge transcended his powers in this case is obvious. On the application of the defendant and his attorney, who was also the attorney for subsequent execution-creditors, and without notice to the plaintiff or his attorney, Judge Stanton directed "the *fi. fas.* now in the hands of the sheriff to be *returned* on the above stated judgment until next term, and all proceedings stayed in the mean time." Such an order was void for want of jurisdiction. It is attempted to be supported on the authority of Commonwealth *v.* Magee, 8 *Barr* 240, which was an action against a sheriff's sureties for the amount of an execution returned in pursuance of a judge's order that *proceedings be stayed* until the second day of next term. That case went very far in holding an *ex parte* order of the judge a justification of the sheriff, but let it stand as an authority for what was adjudged. It does not touch this case. The question here is not upon the liability of the officer, but upon the vitality of the process, and it arises not upon an order to stay proceedings, which was a mere suspension of the faculties of the writ, but upon an order to *return* it, which was to extinguish its powers. Such an order, without notice and without stipulation as to lien, is unsupported by authority, and violative alike of rules of practice and the rights of property. When a court of competent jurisdiction has solemnly awarded an execution returnable to the next term, with the incidental right of lien, no judge of that

[Irons v. McQuewan.]

court, whether president or associate, can, at chambers, in this summary manner reverse the award and make the writ returnable presently to the destruction of the lien.

The consequence of this doctrine is that when the judge rescinded the order and the writ went back before the return day into the sheriff's hands, its life, not even suspended by a void order, dated from the time the sheriff first received it. The sheriff had it in his hands when he sold the goods on the 30th March, 1855, and it was the prior lien upon them, because first issued, and because it was unaffected by the improper liberties taken with it. The plaintiff in the feigned issue had therefore the best right to the fund in court.

> The decree of distribution is reversed, and the record remanded that distribution be made first to Gideon Irons, and then to the other execution-creditors according to the order of their liens.